Jeffrey **KRITENBRINK**, and Douglas Leiter, Plaintiffs,

v.

Jackie **CRAWFORD**, Rex Reed, Linda S. Hilton, Steven Suwe, Glen Wharton, Danielle Detweiler, Edgar Miller, and Connie Bisbee, Defendants.

No. 3:03CV00235–ECR(RAM).

United States District Court, D. Nevada.

Oct. 12, 2006.

Jeffrey Kritenbrink and Douglas Leiter, Donald Y. Evans, Reno, NV, for Plaintiffs.

Stephen D. Quinn and Daniel Wong, Nevada Attorney General's Office, Carson City, NV, for Defendants.

### *Amended Order*

EDWARD C. REED, JR., District Judge.

The order of the court (# 66), dated and filed on September 28, 2006, is amended to read as follows:

This case arises out of the alleged failure of defendants Jackie Crawford, Rex Reed, Linda Hilton, Steven Suwe, Glen Wharton, Danielle Detweiler, Edgar Miller, and Connie Bisbee (collectively "Defendants") to provide adequate procedural protections to Plaintiff Jeffrey Kritenbrink

("Kritenbrink" or "Plaintiff"), a former prisoner, before labeling him a "sex offender." In his Second Amended Complaint (# 31), Plaintiff seeks monetary damages as well as injunctive and declaratory relief.

We had previously dismissed Plaintiff's original claims (*see* Order (# 29), *amended by* Order (# 32)) with leave to amend. Plaintiff filed a Second Amended Complaint (# 31) on April 5, 2004. By our Order of February 2, 2005(# 40), we denied Defendants Motion to Dismiss (# 34). Defendants then filed the instant Motion for Summary Judgment (# 47). Plaintiff filed his Opposition (# 64), and Defendants replied (# 65).

## I. Background

On October 24, 1997, Mr. Kritenbrink was sentenced to 28 to 120 months incarceration in the custody of the Nevada Department of Corrections ("NDOC") after pleading guilty to felony burglary charges (Pl.'s Second Am. Compl. ¶ 15). During his incarceration, the NDOC labeled Kritenbrink a "sex offender" based on his 1977 rape arrest in Anchorage, Alaska (Pl.'s Second Am. Compl. ¶ 16). Kritenbrink alleges that the charge for the alleged rape was dismissed on September 8, 1977 (Pl.'s Second Am. Compl. ¶ 16) and that he "has never been convicted of a sexually related offense and he is not a sex offender" (Pl.'s Second Am. Compl. ¶ 17). NDOC did not provide Kritenbrink with notice or a hearing before labeling him a sex offender (Pl.'s Second Am. Compl. ¶ 19), and it also did not change his classification despite his numerous attempts to have this label removed (Pl.'s Second Am. Compl. ¶ 20).

Kritenbrink's classification as a "sex offender" resulted in the "mandatory and automatic denial of minimum custody status and the attendant transfer to a conservation camp" (Pl.'s Second Am. Compl.

¶ 21(e)). This denial of minimum custody allegedly cost Kritenbrink the ability to earn good time credits (Pl.'s Second Am. Compl. ¶ 22) because he would have been transferred to a conservation camp where he would have earned 10 days of good time credits per month (Pl.'s Second Am. Compl. ¶ 23). Kritenbrink also describes other stigmatizing consequences of being labeled a sex offender. He had to obtain the help of his mother in his attempts to remove the sex offender label (Supplemental Submission In Supp. Of Defs.' mot for Summ. J. (# 54), Ex. A, Depo. Of Pl. 32:12 to 33:25). During the time he was attempting to change his classification, he could not freely inform fellow inmates of the dispute for fear of being subjected to violence as a result of his sex offender status (Depo. Of Pl. 50:4–12). Plaintiff also contends prison officials treated him differently because of his classification: "It was like I was a convicted sex offender ... and that is how I was treated" (Depo. Of Pl. 79:11–13). The classification and his inability to correct it through documentation "ate at [him] every day" (Depo. Of Pl. 77:2–7).

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.

Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary Judgement is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

### III. Personal Participation

 Defendants contend that summary judgment is appropriate because there is no material issue of fact with regard to whether Defendants personally participated in the alleged constitutional violation. Liability under the Civil Rights Act, 42 U.S.C. § 1983 (2006), requires a finding of a sufficient causal connection between the defendant and the constitutional violation at issue. Section 1983 provides that, for liability to attach, the defendant must "subject[ ]" the plaintiff or "cause[ ]" the plaintiff "to be subjected" to a deprivation of a constitutional right. A sufficient causal connection is established "by some kind of direct personal participation in the deprivation[ or] by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978).

With regard to Defendant Steven Suwe, a reasonable trier of fact could find a sufficient causal connection between his actions and any deprivation of Plaintiff's civil rights resulting from Plaintiff's classification. Defendants acknowledge that "Defendant Suwe interviewed Plaintiff, reviewed Plaintiff's Pre[-]sentence Investigation Report, ... and submitted a custody

classification recommendation to the Classification Committee" (Defs.' Motion 2(# 47)). His recommendation and participation in the initial classification hearings may not have constituted the power to label Plaintiff a sex offender. But, they are sufficient to find Defendant Suwe directly participated in the deprivation or at least "set[ ] in motion a series of acts ... which [he] should [have known] would cause others to inflict the constitutional violation." *See Johnson,* 588 F.2d at 743.

The other Defendants, however, were not involved with the original classification decision.

■ Defendants Hilton, Bisbee, Detweiler, and Miller are caseworkers who Plaintiff alleges failed to take action to initiate Plaintiff's reclassification. Defendant Reed is the Offender Management Administrator designated by the Director of NDOC, Defendant Crawford, to review and respond to inquiries on Plaintiff's behalf by Plaintiff's attorney.[1] An omission can "subject" a person to a deprivation of a constitutional right when it constitutes failure "to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588 F.2d at 743. To the extent that the alleged deprivation arose from Plaintiff's classification, there is no evidence that these defendants were involved with the alleged constitutional deprivation.

■ They, however, may have had the power to initiate Plaintiff's reclassification, but failure to reclassify is not in and of itself a constitutional deprivation. Assuming there is a liberty interest implicated by being classified as a sex offender, then under *Neal v. Shimoda,* 131 F.3d 818 (9th Cir.1997), the process that is due consists of a prior hearing, advance written notice, and a written statement as to the reason for the classification. 131 F.3d at 830. *Neal* does not require an appeal as part of the process that is due. *Id.* Therefore, any constitutional violation under the due process clause occurred when Plaintiff was classified without a procedurally adequate prior hearing. The failure to reclassify is not part of the constitutional violation, and Defendants' omissions do not constitute participation in the alleged constitutional deprivation.

Plaintiff alleges that Defendants Crawford and Whorton had supervisory authority over the classification committee. Neither sat on the classification committee, but Crawford had "ultimate responsibility for all classification actions" as the NDOC Director and Whorton, as the Chief of Classification and Planning, was "the designated administrator of the Department's classification system" (Pl.'s Opposition (# 64), Ex. 2, Administrative Regulation 501).

"In a section 1983 action in this circuit, *respondeat superior,* or vicarious liability, may not be imposed in the absence of a state law imposing such liability." *Redman v. County of San Diego,* 942 F.2d at 1446 (*citing Mosher v. Saalfeld,* 589 F.2d 438, 441 (9th Cir.1978), *cert denied,* 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979)). While Administrative Regulation 501 makes Crawford responsible for classifications and designates Whorton as the administrator of the classification system, it does not provide that either should be liable for classification decisions. Crawford and/or Wharton could nonetheless be liable under section 1983 if either was per-

---

1. Plaintiff refers in his Opposition to Defendant's Motion for Summary Judgment (# 64) to a "Defendant Donat," who was allegedly designated by Defendant Crawford to review and respond to inquiries initiated by Plaintiff's mother on his behalf. Donat is not listed as a defendant in Plaintiff's Second Amended Complaint (# 31) nor in Defendants' Motion for Summary Judgment (# 47). Donat is not a party to this case.

sonally involved in the constitutional deprivation.

■ Supervisory liability attaches when a supervisor personally participates in the acts in question. "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989). There is no evidence that either Crawford or Whorton were personally involved in the classification decision or that there was wrongful conduct by either Crawford or Whorton that is sufficiently causally connected to the constitutional violation.

■ Supervisory liability can also attach where "supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of constitutional violation.'" *Redman,* 942 F.2d at 1455–46, (*quoting Hansen,* 885 F.2d at 646). Plaintiff has not alleged that Defendants Crawford and/or Whorton implemented a deficient policy that meets this standard, and there is no evidence presented that they implemented such a deficient policy.

## IV. Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). Here, Plaintiff is arguing that his classification as a sex offender implicated a liberty interest, and he was therefor entitled to procedural protections under the Due Process Clause. Evaluating a due process claim requires a two part inquiry: first, we must determine whether a liberty interest is implicated, and second, we must determine what process is due. *Neal v. Shimoda,* 131 F.3d at 827.

### A. Liberty Interest

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id.* (citations omitted).

■ In the prison context, a liberty interest arising from the Constitution itself is implicated when conditions of confinement "exceed[ ] the sentence in such an unexpected manner so as to give rise to protection by the Due Process Clause of its own force." *Mitchell v. Dupnik,* 75 F.3d 517, 523 (9th Cir.1996) (*quoting Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). In analyzing whether Plaintiff has a liberty interest arising from the Constitution itself, this Court has previously indicated that Plaintiff's confinement at a higher security prison and his lack of opportunity to attend work camp and earn work credits does not exceed his sentence in an "unexpected manner so as to give rise to protection by the Due Process Clause" (Order 6(# 40)). We did not analyze, however, whether these disadvantages combined with the stigmatization that attends being labeled a sex offender sufficiently exceeds his expected sentence so as to give rise to a liberty interest derived from the Due Process Clause.

Defendants have argued that there were no stigmatizing consequences of Plaintiff having been labeled a sex offender. They contend that the sex offense information was only entered "in confidential code on a confidential computer file" and that Plaintiff was unaware of the computer entry until March 2002 (Defs.' Motion 9(# 47); Supplemental Submission in Supp. Of

Defs.' Mot. For Summ. J. (# 54), Ex. A, Depo. Of Pl. 49:11–13). To the best of Plaintiff's knowledge, no other inmates knew of the label except insofar as they learned of it from Plaintiff (Depo. Of Pl. 49:19–24).

Viewing the facts in the light most favorable to the non-moving party, we find a material issue of fact exists with regard to Plaintiff's stigmatization. Plaintiff knew that he was being characterized as a sex offender from early on. At his intake interview in 1997, Mr. Suwe indicated that because of the rape charge he was going to send Plaintiff to a higher security prison (Depo. Of Pl. 9:5–13). A year or so later, Plaintiff was denied assignment to work camp because of the sex offense (Depo. Of Pl. 27:4–9). After this initial denial, Plaintiff attempted through 2002 to clear his name by providing, through his mother and lawyer, information regarding the dismissal of the rape charge (Depo. Of Pl. 32:17–22). He also spoke to caseworkers and the warden regarding assignment to work camp, but his requests were all denied on the basis of the rape charge (Depo. Of Pl. 45:9–18). Plaintiff alleges that caseworkers, upon learning of his classification, treated him differently (Depo. Of Pl. 73:15 to 74:15). In March of 2002, Defendant Hilton, a caseworker, responded to Plaintiff's kite indicating that she had "verified in the computer that in the reclass screen it is convicted sex offender" (Depo. Of Pl. 47:11–13). While Plaintiff may not have known that he was labeled as a sex offender in prison computers until Defendant Hilton's response to his kite in March of 2002, he was certainly labeled as such well before then and experienced the ramifications of the labeling for years.

Furthermore, as a matter of law, Plaintiff need not show stigmatization resulting from this type of classification. The Ninth Circuit has held that labeling someone a sex offender is inherently stigmatizing:

"We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." *Neal,* 131 F.3d at 829.

Accordingly, in determining whether a liberty interest under the Due Process Clause is implicated, we must consider the stigmatization of the label itself as well as the resultant adverse consequences (i.e., assignment to medium security and refusal of work camp assignments). The Supreme Court and various circuits have generally held that where an inmate must submit to treatment as a result of his or her classification, the inmate has a liberty interest under the Due Process Clause. As the Eleventh Circuit noted, prisoners retain a "residuum of liberty" derived from the Due Process Clause "that would be violated by classification as a sex offender without complying with minimum requirements of due process." *Kirby v. Siegelman,* 195 F.3d 1285, 1291 (11th Cir.1999).

These courts, however, have held only that inmates have a Due Process Clause liberty interest in classification when classification results in mandatory treatment or therapy. In *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), a Due Process Clause liberty interest was implicated when an inmate was "character-iz[ed] . . . as a mentally ill patient and transfer[ed] to [a mental hospital where he was to undergo] mandatory behavior modification treatment." 445 U.S. at 488, 100 S.Ct. 1254. In *Kirby v. Siegelman,* the Eleventh Circuit noted that classification as a sex offender would result in ineligibility for parole unless the inmate attended group therapy. 195 F.3d at 1288. Those classified as sex offenders were also stigmatized and made ineligible for minimum custody and work programs. *Id.* Similarly, in *Coleman v. Dretke,* the regulation at issue subjected those inmates classified as sex offenders to "intrusive and behavior-

modifying [therapy] techniques" of a "highly invasive nature." 395 F.3d 216, 223 (5th Cir.2004).

In contrast, Mr. Kritenbrink does not allege mandatory participation in a treatment or therapy program. He alleges that he was denied a lower security classification and work camp assignments as a result of his sex offender label. The adverse consequences of Plaintiff's stigmatization are thus distinguished from those cases where a liberty interest under the Due Process Clause itself was found.[2] Plaintiff's stigma plus the denial of minimum security classification and work camp assignments does not constitute conditions of confinement exceeding his sentence in an unexpected manner so as to give rise to a liberty interest under the Due Process Clause itself.

Finding that a liberty interest arising from the Due Process Clause alone is not implicated, however, does not dispose of the due process issue. Liberty interests may be granted by state and prison regulations and may thereby invoke due process protections. *Wilkinson,* 125 S.Ct. at 2394; *Neal,* 131 F.3d at 827. Here, the regulation involved was Administrative Regulation 521 ("AR 521"). According to the NDOC Information Bulletin # 93–3, which concerned AR 521, the prison has a policy that "[a]ssigned custody should be no higher than that which is necessary to ensure the safety of the free community and the institutions and facilities of the Department" (Defs.' Mot. For Summ. J. 13(# 47), Ex. 1). Under the Informational Bulletin, prisoners with convictions or a pattern of arrests for sexual offenses cannot be assigned to minimum custody, and those with a "singular sex offense arrest, without conviction, will be considered on a case by case basis [taking into account the] offense facts." (Defs.' Mot. For Summ. J. 17(# 47), Ex. 1). It appears, viewing the evidence in the light most favorable to the non-moving party, that once a prisoner is labeled as a sex offender, no discretion remains to move the prisoner to minimum custody or to grant work assignment requests.[3]

In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418, the Supreme Court "abrogated the methodology of parsing the language of particular regulations." *Wilkinson,* 125 S.Ct. at 2394 (describing the Court's holding in *Sandin* ). "After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " *Id.* (*quoting Sandin,* 515 U.S. at 484, 115 S.Ct. 2293). The appropriate standard is classification resulting in an

---

**2.** Furthermore, it appears that *Kirby* and *Coleman* have not been adopted by the Ninth Circuit. In *Neal,* the Ninth Circuit restrained its analysis to whether the labeling of an inmate as a sex-offender implicated a state-created liberty interest. 131 F.3d at 827–29. The *Neal* Court did not consider whether a liberty interest derived from the Due Process clause itself was implicated, even though the plaintiff in that case, like the Plaintiff in *Kirby*, was compelled to undertake therapy based on his classification.

**3.** NDOC's Initial Classification Summary regarding Plaintiff concluded, "He is not eligible for minimum custody due to the prior sex offense" (Pl.'s Opp. To Defs.' Mot. For Summ. J. (# 64), Ex. 5, Initial Classification Summary). The language of this document indicates that labeling Plaintiff as a sex offender automatically precluded him from minimum custody. Likewise, the behavior of caseworkers and prison officials in this case does not reflect the existence of discretion as to custody status and work camp assignments as long as the sex offender label remained on Plaintiff's record.

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 482, 115 S.Ct. 2293.[4]

The *Sandin* Court detailed three guideposts that frame the state-created liberty interest. We have previously described them as follows:

> [Under *Sandin,* the Court examines] (1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody[,]' and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will inevitably affect the duration of the prisoner's sentence.

(Order 13(# 32) (*quoting Sandin,* 515 U.S. at 486–87, 115 S.Ct. 2293)).

With regard to the first guidepost, Mr. Kritenbrink's classification as a sex offender did not comport with the prison's discretionary authority. Plaintiff's classification resulted in stigma and attendant disadvantages that do not "mirror" the conditions imposed on those in administrative segregation or protective custody. Plaintiff was labeled as a sex offender, a morally charged label that carries great stigma. He had to obtain the help of his mother in his attempts to clear the sex offender label from his record (Supplemental Submission In Supp. Of Defs.' mot for Summ. J. (# 54), Ex. A, Depo. Of Pl. 32:12 to 33–25). Furthermore, while he was attempting to obtain re-classification, he could not freely inform fellow inmates of the classification dispute for fear of being subjected to violence as a result of his sex offender status (Depo. Of Pl. 50:4–12). Plaintiff also contends prison officials treated him differently because of his classification: "It was like I was a convicted sex offender ... and that is how I was treated" (Depo. Of Pl. 79:11–13). The classification and his inability to correct it through documentation "ate at [him] every day" (Depo. Of Pl. 77:2–7).

■ As previously noted, the Ninth Circuit in *Neal* said it "[could] hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." 131 F.3d at 829. The *Neal* Court went on to hold that "The classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that the Supreme Court held created a protected liberty interest." 131 F.3d at 829. In *Neal,* a prisoner who had been charged but not convicted of a sex offense[5] was classified as a sex offender and required to undergo counseling in or-

---

**4.** In *Neal,* the Ninth Circuit observed that the *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), test for state-created liberty interests, which required "explicitly mandatory language" in the applicable regulations, has likely been disapproved by the Supreme Court in *Sandin. Neal,* 131 F.3d at 829. Nonetheless, the *Neal* Court went on to find that the *Thompson* test is still met where classification as a sex offender has mandatory consequences:

> In this case, the substantive predicate is the labeling of the targeted inmate as a sex offender. Once that is done, it is *mandato-*

ry that the labeled inmate successfully complete the specified treatment program in order to become eligible for parole. There is no room for prison officials' discretion once an inmate has been labeled a sex offender.

131 F.3d at 830. Likewise, it appears here that once a NDOC inmate is classified as a sex offender, no discretion remains with regard to eligibility for minimum custody and work assignments.

**5.** As a result of a plea bargain, he pled guilty to other crimes and the charges involving sexual offenses were dropped. 131 F.3d at 822.

der to become eligible for parole. 131 F.3d at 822. Here, Plaintiff was not compelled to undergo treatment like the plaintiffs in *Neal* and *Vitek v. Jones*,[6] but he nonetheless bore the stigma of his label. And, taking the evidence in the light most favorable to the non-moving party, Plaintiff was denied minimum custody status and work camp assignments as a result of the sex offender label. The denial of these privileges alone would certainly mirror that experienced by inmates in administrative segregation or protective custody. But, the stigmatizing label in conjunction with these disadvantages goes beyond the typical hardships of prison life.

In addition, the duration of Plaintiff's classification spanned the entire time he spent in prison, thus satisfying the second guidepost. Plaintiff was labeled as a sex offender from his initial classification in 1997 through his release in November of 2002.

As to the third guidepost, however, Plaintiff's classification may not have "inevitably" affected the duration of his sentence. Had Plaintiff attended work camp, he could have earned good-time credits that would have shortened his sentence. Defendants contend that even absent the sex offender label, Plaintiff would have remained ineligible for work camp assignment. For this argument, Defendants rely on the declaration of Defendant Whorton, which states that Mr. Kritenbrink's "medical issues would have ... precluded assignment to a work camp." (Defs.' Mot. For Summ. J. (# 47), Decl. Of Def. Whorton ¶ 13). The Declaration does not indicate what responsibility Defendant Whorton had as Chief of Classification and Planning in determining medical eligibility for work camp assignments. Without

proper grounds for this statement in his declaration and without any evidence concerning opinions on eligibility at the time of the facts at issue, we find his statement unconvincing. (Decl. Of Def. Whorton ¶ 13). Plaintiff has indicated that there was no medical reason he could not undertake the labor involved with a work camp assignment (Depo. Of Pl. 56:16–22). We thus find, viewing the evidence in the light most favorable to the non-moving party, that Plaintiff would not have necessarily been excluded from work camp assignment on the basis of any medical condition. Even so, the causal relationship between removal of the sex offender label and the earning of work credits is too attenuated to establish inevitability. Without a showing of inevitability, the third guidepost is not met.

Nonetheless, when we examine all three guideposts together, we find Mr. Kritenbrink's classification as a sex offender resulted in "atypical and significant hardship ... in relation to the ordinary incidents of prison life" sufficient to invoke the procedural protections of the Due Process Clause.

### B. Procedural Requirements

Having found an implicated liberty interest, we now inquire as to what process was due. The decision in *Neal v. Shimoda* details what process is due when classifying an inmate as a sex offender. There, the Ninth Circuit emphasized that the prisoner must receive: (1) a prior hearing with the ability to call witnesses and present documentary evidence, (2) advance written notice of the prior hearing, and (3) a written statement by the fact-finder of the evidence relied on and the reasons for

---

6. The Supreme Court in *Vitek* found that classifying a prisoner as mentally ill and transferring him to a mental hospital for mandatory behavior modification treatment implicated a state-created liberty interest as well as a liberty interest arising from the Due Process Clause itself. 445 U.S. at 490–91, 100 S.Ct. 1254.

the inmate's classification as a sex offender. 131 F.3d at 830.

■ None of these procedural protections were provided in this case. According to the prison regulations in force at the time, initial classification decisions were made by a classification committee consisting of Wardens, Associate Wardens, and Caseworker IIIs (Pl.'s Opp. To Defs.' Mot. For Summ. J. (# 64), Ex. 2, Administrative Regulation 501). Plaintiff appeared before the classification committee during his initial classification, but the meeting was not a hearing in satisfaction of *Neal.* He was not informed that he might be classified as a sex offender before the meeting. In fact, his rape charge was not mentioned at the meeting (Depo. Of Pl. 18:23, 19:19–21, 23:10–12). He had no opportunity to bring witnesses or present documentary evidence concerning the dismissal of his rape charge at the time of his initial classification. The only opportunity he had to discuss the facts surrounding the rape charge was during his intake interview with Defendant Suwe, who did not give Plaintiff an opportunity to either explain the facts of the case or gather any necessary documentation to aid Defendant Suwe in making his classification recommendation to the committee (Depo. Of Pl. 9:5 to 10:1). Furthermore, Mr. Kritenbrink was never given a written statement by the fact-finder indicating the evidence relied on and the reasons for his classification as a sex offender.[7]

7. The only written notice that Plaintiff received appears to have been Defendant Hilton's response to his kite of March 7, 2002. The response simply states, "I verified in the computer that in the reclass screen it is convicted sex offender." (Pl.'s Opp. To Defs.' Mot. For Summ. J. (# 64), Ex. 6). This statement does not meet the basic requirements of a written statement of evidence and reasons as required by *Neal.* It was issued almost five years after Plaintiff was labeled a sex offender, was not written by the fact-finder, was only made in response to a direct inquiry by

## V. Qualified Immunity

■ Defendants contend that they are also entitled to summary judgment on the basis of qualified immunity. In accordance with *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Id.* at 200, 121 S.Ct. 2151. Then, assuming the violation is established, the next step is to determine "whether the right was clearly established." *Id.*

■ With regard to the first question, our analysis of the due process claim and of Defendant Suwe's participation in Plaintiff's classification indicates that a constitutional right would have been violated by Defendant Suwe on the facts alleged. Because the other defendants did not participate in the acts at issue, no constitutional violation would have been committed by them on the facts alleged. Thus, no further inquiries concerning qualified immunity are necessary for any of the defendants with the exception of Mr. Suwe. *See id.* at 201, 121 S.Ct. 2151.

In the second step of the inquiry, we ask whether the right Defendant Suwe would have violated on the facts alleged was clearly established. The Supreme Court in *Saucier v. Katz* elaborated on this step as follows:

the Plaintiff, and did not indicate the evidence relied on in classifying Plaintiff or the reasons for his classification. Additionally, letters to Plaintiff's mother and lawyers fail to meet the standards of *Neal* (Pl.'s Opp. To Defs.' Mot. For Summ. J. (# 64), Exs. 11, 14, & 15). These letters were not sent to Plaintiff directly, are not specific as to the evidence and reasons relied on in classifying Plaintiff, were not written by the fact-finder, and were only sent in response to an inquiry on Plaintiff's behalf.

"[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202, 121 S.Ct. 2151 (*quoting Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In October of 1997, when the relevant actions took place, the Ninth Circuit had not yet issued its decision in *Neal v. Shimoda,* 131 F.3d 818. While *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, and *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418, had both been decided, it was not sufficiently clear from these decisions that classification of an inmate as a sex offender implicated a liberty interest and that so classifying an inmate without procedural safeguards created liability under section 1983. Therefore, Defendant Suwe is entitled to qualified immunity.

## VI. Declaratory Relief

In his amended complaint, Plaintiff requests declaratory relief (Amended Complaint ¶ 29 (# 31)), and in his Reply to Defendants' Motion for Summary Judgment (# 64), Plaintiff requests that the Court resolve the issue of declaratory relief in deciding Defendants' Motion (# 47). Declaratory remedies are discretionary. We decline to grant declaratory relief in this action because none of the Defendants in this case are liable. With the exception of Defendant Suwe, the defendants did not personally participate in the constitutional violation. Defendant Suwe is shielded from liability because he has qualified immunity and, under *Saucier,* qualified immunity is "an *immunity from suit*", 533 U.S. at 201, 121 S.Ct. 2151 (emphasis in original). Having found that none of the defendants are liable for a constitutional violation, it would be inappropriate to nonetheless grant declaratory relief.

## VII. Injunctive Relief

Plaintiff also seeks injunctive relief in his amended complaint (Amended Complaint ¶ 29 (# 30)). He requests "a permanent injunction requiring Defendants to expunge from all the files and records of the NDOC, the Board of Parole Commissioners and the Department of Probation and Parole any and all documents pertaining to or referencing in any manner the NDOC classification of Plaintiff as a sex offender and requiring those documents be provided to Plaintiff for destruction" (Amended Complaint ¶ 29 (# 30)). In his Reply to Defendants' Motion for Summary Judgment (# 64), Plaintiff requests that the Court address his request for injunctive relief in deciding Defendants' Motion (# 47).

We decline to grant injunctive relief in this case. Plaintiff's classification as a sex offender only constituted a constitutional violation when it brought with it attendant disadvantages, namely assignment to a higher level of security and the refusal of work camp assignments. Since the facts in question, Plaintiff has been released from prison and discharged from parole. Even assuming that there are still prison documents referring to Plaintiff as a sex offender, Plaintiff has not shown a sufficient risk of future adverse consequences as a result of any continued classification.

***IT IS THEREFORE HEREBY ORDERED THAT*** Defendants' Motion for Summary Judgment (# 47) is **GRANTED**.

*IT IS, FURTHER, HEREBY OR-DERED* that the clerk shall enter judgment accordingly.