[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/17/99
THOMAS K. KAHN
CLERK**

————————————————

No. 98-6236

————————————————

D.C. Docket No. 98-D-357-N

JEFFERY POWELL KIRBY,

Plaintiff-Appellant,

versus

FOB JAMES, Hon. in his official
capacity as Governor of State of Alabama,
BILL PRYOR, Hon. in his official capacity
as Attorney General of State of Alabama, et al.,

Defendants-Appellees.

————————————————

No. 98-6672

————————————————

D.C. Docket No. 98-A-153-N

ROBERT EDMOND,

Plaintiff-Appellant,

versus

JOE S. HOPPER, Commissioner A.D.O.C.
in his individual and official capacities;
JOHN SHAVER, Deputy Commissioner
in his individual and official capacities, et al.,

Defendants-Appellees.

---------------------------------------------
Appeals from the United States District Court for the
Middle District of Alabama
---------------------------------------------

**(November 17, 1999)**

Before TJOFLAT and DUBINA, Circuit Judges, and THRASH*, District Judge.

PER CURIAM:

These cases, consolidated for appeal, involve challenges to Alabama's Community Notification Statute ("the Act"), Ala. Code § 15-20-20.  Appellant Jeffery Powell Kirby appeals the district court's dismissal of his claims that the Act violates the *Ex Post Facto* and Double Jeopardy Clauses of the United States Constitution. The district court dismissed the complaint for failure to state a claim upon which relief may be granted because it determined that Kirby's claim was not ripe.  Appellant  Edmond appeals the district court's grant of summary judgment as to his claims that Defendant Alabama Department of Corrections and its employees violated his constitutional rights by classifying him as a sex offender although he has never been convicted of a sex offense.  The district court granted summary judgment because it determined that Edmond did not establish an equal protection claim or a due process violation.  Further, the district court determined that Edmond's challenge

_____
*Honorable Thomas W. Thrash, U.S. District Judge for the Northern District of Georgia, sitting by designation.

to the Community Notification Statute was not ripe. For the reasons set forth below, we affirm the district court as to Kirby because his claim is not ripe. We reverse the district court as to Edmond's due process claim because we find that Edmond's classification as a sex offender implicates a liberty interest under the Due Process Clause. We remand the case to the district court because the record is inadequate for us to determine whether he received adequate notice and hearing to satisfy due process requirements. We affirm the district court as to Edmond's remaining claims.

## I.    FACTS AND PROCEDURAL HISTORY

## A.  KIRBY

Kirby is an inmate in custody of the Alabama Department of Corrections ("ADOC"). He is serving a 15 year sentence for first-degree sodomy. Kirby filed the present action under 42 U.S.C. § 1983 claiming that the Act violates the *Ex Post Facto* and Double Jeopardy Clauses of the United States Constitution. Additionally, Kirby alleged that he was denied parole due to the Act, and that this violated the Due Process and Equal Protection Clauses.[1] Kirby's conviction for first-degree sodomy constitutes a sex offense as defined by the Act. Ala. Code § 15-20-20, et seq. (1975). As a convicted sex offender, the Act applies to Kirby upon his release from prison.

---

[1]Kirby appeals only the district court's dismissal of his *ex post facto* and double jeopardy challenges.

The Act provides for notification of victims and neighbors of a criminal sex offender thirty days prior to his release from custody. Because Kirby is not scheduled for release until 2005, the district court adopted the Magistrate Judge's recommendation and found that Kirby has not yet suffered an injury from the Act. Accordingly, the court dismissed Kirby's claim as not ripe for adjudication.

## B. EDMOND

Edmond is an inmate incarcerated by the ADOC. He is serving a 20 year sentence for attempted murder. He filed the present action under 42 U.S.C. § 1983 against ADOC Commissioner Joe Hopper, Deputy Commissioner John Shaver, and other ADOC officials claiming that he was unlawfully classified in prison as a sex offender despite never having been convicted of a sex offense. Edmond first claims this classification violates his equal protection rights because sex offenders are treated differently in prison. Second, he claims the classification violates his due process rights because he was labeled a sex offender without being convicted of any sex crimes. Third, he alleges the classification violates his right against self-incrimination because he is forced to admit past behavior in sex offender classes. Finally, Edmond contends his classification will improperly subject him to Alabama's Community Notification Act after his release from prison.

ADOC classified Edmond as a sex offender based on two previous sex-related charges listed in his PreSentence Investigative Report ("PSI"). In 1984, he was charged with rape. The charge was no billed by the grand jury. In 1992, a charge of sexual abuse was *nolle prossed* in the trial court. According to ADOC Deputy Commissioner John Shaver, these two sex charges, even without a conviction, support Edmond's classification as a sex offender under ADOC guidelines. Shaver also stated that prison classification officials received details from the Russell County District Attorney's Office reflecting sexual abuse and kidnaping in Edmond's prior history. Shaver contends this prior history denotes a pattern of behavior further justifying the sex offender classification.

As a consequence of being classified as a sex offender, Edmond must participate in group therapy sessions of Sexual Offenders Anonymous as a prerequisite for parole eligibility. The sessions meet three times a week at the prison and involve participants admitting past sexual offenses. Edmond contends this requirement violates his right against self-incrimination. Additionally, being classified as a sex offender makes Edmond ineligible for minimum custody classification. Prisoners in minimum custody are eligible for certain work-release programs and community custody programs. Moreover, Edmond contends his classification as a sex offender imposes a stigma that amounts to a significant hardship

in relation to the ordinary incidents of prison life. Edmond contends he received neither notice nor opportunity to be heard prior to being classified as a sex offender. Defendants contend that Edmond had an opportunity to be heard through his annual classification review, and that he will be eligible for minimum custody.

On Defendants' motion,[2] the district court adopted the recommendation of the Magistrate Judge and granted summary judgment to Defendants on all claims. The court determined that Edmond did not establish an equal protection violation because he did not allege that the different treatment was based on race, religion, or another constitutionally protected interest. As to Edmond's due process claim, the court granted summary judgment because ADOC regulations clearly provide for sex offender classification for inmates with two or more arrests for sex crimes regardless of the disposition of those claims. The court found that Edmond's claim regarding his mandatory participation in the sex offender treatment program was meritless because any admission of guilt required by the program would be privileged communication not subject to disclosure in a judicial proceeding. Finally, the court found that

---

[2]Defendants filed a special report with the Magistrate Judge asserting that Edmond failed to state a claim under 42 U.S.C. § 1983. The Magistrate Judge construed the special report as a motion for summary judgment and recommended that summary judgment be granted for Defendants on all claims.

Edmond's challenge of Alabama's notification statute was not ripe because Edmond has not been released from custody.

## II.   STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same standard as the district court.  See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1326 (1998), reh'g and reh'g en banc denied, 172 F.3d 884 (11th Cir. 1999).  Summary judgment is appropriate where, after viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Id.

We also review *de novo* the district court's dismissal of a complaint for failure to state a claim upon which relief could be granted.  See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 948 (11th Cir. 1997). When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs.  See Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998), cert. denied, — U.S. —, 119 S.Ct. 1027, 143 L.Ed.2d 38 (1999).

## III.   DISCUSSION

### A.   KIRBY

Kirby claims that Alabama's Community Notification Act[3] constitutes retrospective punishment in violation of the *Ex Post Facto* and Double Jeopardy Clauses. Under the *Ex Post Facto* Clause, the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). The Double Jeopardy Clause prohibits, *inter alia*, "a second prosecution for the same offense after conviction...and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Because the Act will not affect Kirby until his release from prison in 2005, we agree with the district court that Kirby's claim is not ripe for adjudication.

As part of the "case or controversy" requirement of Article III, a party must suffer injury or come into immediate danger of suffering an injury before challenging a statute. See O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Essentially, the ripeness requirement "prevent[s] the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The ripeness requirement prevents courts from interfering

---

[3]We note that Alabama's Community Notification Act contains both a registration and a notification component. Kirby challenges only the notification provision of the Act.

with legislative enactments before it is necessary to do so, and enhances judicial decision-making by ensuring that cases present courts with an adequate record for effective review. Id. Ripeness requires the weighing of two factors: (1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review. Id. at 139.

In Artway v. Attorney General of State of N.J., 81 F.3d 1235 (3rd Cir. 1996), the Third Circuit thoroughly examined the ripeness requirement as applied to New Jersey's community notification law. Artway involved a convicted sex offender who sought an injunction against the enforcement of a New Jersey statute requiring certain convicted sex offenders to register with local law enforcement officials. Additionally, the statute provided for community notification upon the release of certain sex offenders. The district court upheld the registration component of the statute, but enjoined enforcement of the community notification provision. On appeal, the Third Circuit held that the challenge to the notification aspects of the statute was not ripe. We agree with the reasoning of the Third Circuit, and follow its analysis in considering the State's argument that Kirby's *ex post facto* and double jeopardy challenges are not ripe.

To begin with, the court must consider whether Kirby has suffered injury or come into immediate danger of suffering injury. Artway, 81 F.3d at 1246. This factor

inquires whether a credible threat of injury exists, or rather a mere speculative threat insufficient for Article III purposes. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). While pre-enforcement review is the exception rather than the rule, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Id. (internal quotations omitted).

Kirby's challenge to the notification provision of the Act cannot meet this element of the ripeness requirement. For the notification provision to affect Kirby, there exists a "crucial contingency," Artway, 81 F.3d at 1248, in that the Act must remain in effect and unamended until 30 days prior to Kirby's release from prison in the year 2005. Whether this contingency will occur is a matter of speculation. The Court may not pass upon hypothetical matters. Moreover, Kirby faces no hardship from denying review of his notification challenge at this point; he is not going anywhere and his prior arrest and conviction record is not going to change. Accordingly, we affirm the district court's dismissal of Kirby's claim on ripeness grounds.

## B.    EDMOND

Edmond claims that the procedures by which he was classified as a sex offender were insufficient to satisfy the requirements of the Fourteenth Amendment's Due Process Clause. We agree that the classification implicates a liberty interest, but cannot determine from the record whether the procedures afforded satisfy constitutional requirements.

With any procedural due process challenge, we must first determine whether the injury claimed by the plaintiff is within the scope of the Due Process Clause. Bass v. Perrin, 170 F.3d 1312, 1318 (11ᵗʰ Cir. 1999). The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV. As Edmond was clearly not deprived of life or property, he is entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment. Determining whether one was deprived of liberty presents a unique challenge with prisoners, who are already deprived of their liberty in the ordinary understanding of the word. The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required. The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. See Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Vitek v. Jones, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (holding that a prisoner

is entitled to due process prior to being transferred to a mental hospital).  The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484, 115 S.Ct. at 2300; Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process).  In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state.  Bass, 170 F.3d at 1318.

In this case, the state has not created a liberty interest.  It is beyond dispute that state statutes and regulations may create liberty interests that are entitled to the procedural protections of the Due Process Clause.  See Vitek, 445 U.S. at 488, 100 S.Ct. at 1261. For example, there is no constitutional right to parole.  See Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).  Nevertheless, once a state grants a prisoner the conditional liberty dependent on the observance of special parole restrictions, due process protections attach to parole revocation.  Vitek, 445 U.S. at 488, 100 S.Ct. at 1261. This case is different.  Alabama has not created a liberty interest in not being classified as a sex offender absent a conviction for a sex related crime.  Indeed, the

ADOC regulations specifically declare otherwise. In pertinent part, the regulations provide that "inmates with two or more arrests of record for sex crimes for which the disposition is unknown or given as dismissed, no billed, nolle prossed, etc., will be construed as sex offenders for the purpose of classification. Cases adjudicated as not guilty will not be counted." [R. 13, p. 4]. Thus, Edmond did not "possess any right or justifiable expectation" based on state law that he would not be classified as a sex offender. Vitek, 445 U.S. at 489, 100 S.Ct. at 1261.

We conclude, however, that Edmond does have a liberty interest in not being branded a sex offender. The Supreme Court has held that when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, a prisoner is entitled to some procedural protections. Sandin, 515 U.S. at 484, 115 S.Ct. at 2300; Vitek, 445 U.S. at 492-93, 100 S.Ct. at 1263-64. "There is no iron curtain drawn between the Constitution and the prisons of this country" and "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." Wolff, 418 U.S. at 555-56, 94 S.Ct. at 2974-75. Even after Edmond's conviction for attempted murder, he retains a "residuum of liberty" that would be infringed by classification as a sex offender without complying with minimum requirements of due process. Vitek, 445 U.S. at 491, 100 S.Ct. at 1263.

We find support for our conclusion in <u>Vitek v. Jones</u>, *supra*. There, prisoners challenged a Nebraska statute authorizing prison officials to classify inmates as "mentally ill" without a hearing and transfer them to hospitals for involuntary confinement. <u>Vitek</u>, 445 U.S. at 483-86, 100 S.Ct. at 1259-60. The Supreme Court undertook a thorough examination of the liberty interest implicated by the statute. The Court first held that the state law created an "objective expectation" that a prisoner would not be transferred unless he suffered from a mental illness that could not be adequately treated in prison. This objective expectation gave the prisoners a liberty interest entitling them to appropriate procedures in determining the conditions which would warrant a transfer to a mental hospital. <u>Vitek</u>, 445 U.S. at 489-90, 100 S.Ct. at 1261-62. Additionally, and important to this case, the Court found that the prisoners had a liberty interest in not being transferred to a mental hospital independent of state law. <u>Id</u>. at 491, 100 S.Ct. at 1263. The Court concluded that the liberty interest encompassed both the labeling of the inmate as mentally ill as well as the transfer to the mental hospital. <u>Id</u>. at 487-88, 100 S.Ct. at 1260-61. Moreover, the Court recognized that the prisoners also faced the significant stigma associated with mental illness. <u>Id</u>. at 492, 100 S.Ct. at 1263.

The Court also noted that one of the historic liberties protected by the Due Process Clause is the right to be free from unjustified intrusions on personal security.

*Id.* quoting Ingraham v. Wright, 430 U.S. 651 (1977). The compelled treatment through mandatory behavior modification programs, to which the prisoners in Vitek were exposed, was a proper factor to be considered by the district court. Id. The Court concluded that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." Id. at 494, 100 S.Ct. at 1264.

Likewise, in this case, the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause. As noted by the Ninth Circuit, "[w]e can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." A.J. Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997). An inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender. Having concluded that Edmond has a protected liberty interest in not being classified as a sex offender, the question becomes whether he received due process in conjunction with the deprivation of that interest. As noted above, the factual record is insufficient for us to decide this question. Accordingly, we remand

this case to the district court for further proceedings consistent with this opinion.  We affirm the district court with respect to Edmond's other claims.

## IV.    CONCLUSION

In Case No. 98-6236, the judgment of the district court is AFFIRMED.  In Case No. 986672, the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART.  The case is REMANDED to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED in part.