[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13836
Non-Argument Calendar
_____

D.C. Docket No. 7:16-cv-00649-KOB-SGC


VERTIS ANTHONY,

Plaintiff-Appellant,

versus

WARDEN,
MS. BIAS,
Classification Supervisor,
NURSE MCKAY,
Nurse Practitioner,
CHRISTOPHER GORDY,

Defendants-Appellees,

ATTORNEY GENERAL OF THE STATE OF ALABAMA, THE,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 30, 2020)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Vertis Anthony, an Alabama prisoner proceeding *pro se*, appeals the district court's grant of summary judgment in his 42 U.S.C. § 1983 action against Nurse Brandice McKay, Christopher Gordy, and Willie Thomas.[1] Anthony raises two issues on appeal.[2] First, he asserts that the district court erred in granting summary judgment on his conditions-of-confinement claims because Gordy violated his

---

[1] "We review a district court's grant or denial of summary judgment de novo." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Id.* at 836–37. Facts alleged in a sworn pleading are sufficient to defeat summary judgment, and a separate sworn affidavit is, therefore, not always necessary. *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

[2] We briefly note that Anthony has forfeited several additional arguments. Although Anthony stated in his sworn second amended complaint that Gordy placed him on the most restrictive custody level despite a prison policy requiring that he be placed on the least restrictive custody level, he has abandoned this argument by failing to press it on appeal. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that "issues not briefed on appeal by a *pro se* litigant are deemed abandoned"). For the first time on appeal, Anthony argues that prison policy only provided for a maximum 30-day term of administrative segregation for inmates who were transitioning from close custody and had no disciplinary infractions in the preceding 6 months. Anthony has waived this issue on appeal because he did not raise it in the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004). Anthony's claims under the Administrative Procedure Act, the Fair Debt Collection Practices Act, the Third Amendment, and the Fifth Amendment are similarly forfeited because he did not raise them in the district court.

2

rights under the Eighth and Fourteenth Amendments by placing him on administrative segregation for an excessive period and depriving him of exercise privileges.   Second, Anthony contends that the district court erred in granting summary judgment as to his medical claims because McKay violated the Eighth Amendment by acting with deliberate indifference toward his medical needs, and Gordy and Thomas violated the Eighth Amendment by ignoring a medical order to transfer him to a different facility.   We disagree and will affirm.

## I

Prisoners may "claim the protections of the Due Process Clause" and, therefore, "may not be deprived of life, liberty, or property without due process of law."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Even so, the Due Process Clause does not, by itself, establish a "liberty interest in freedom from state action taken 'within the sentence imposed.'"  *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quotation omitted).  The "two situations in which a prisoner can be . . . deprived of his liberty such that due process is required" are: (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court," and (2) "when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the

3

inmate in relation to the ordinary incidents of prison life.'" *Kirby v. Siegelman*, 195 F.3d 1285, 1290–91 (11th Cir. 1999) (quoting *Sandin*, 515 U.S. at 484).

The Eighth Amendment can give rise to three types of claims by prisoners: "[1] specific conditions of confinement, [2] excessive use of force, and [3] deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303–04 (11th Cir. 2010). After incarceration, only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "Among [such] inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). "In making this determination," courts "must ascertain whether the officials involved acted with 'deliberate indifference' to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002) (quoting *Hudson*, 503 U.S. at 8).

\*      \*      \*

Anthony complains that his six-month confinement in administrative segregation at Limestone Correctional Facility violated his Eighth and Fourteenth Amendment Rights.[3] By way of background, Anthony was initially placed in

---

[3] It is not always clear on which constitutional provisions Anthony seeks to rely. Nevertheless, we construe his filings liberally and address both Eighth and Fourteenth Amendment theories.

segregation at Draper Correctional Facility after a Hearing Officer formally adjudicated him guilty of assaulting a fellow inmate at Draper and sentenced him to 25 days of disciplinary segregation. After completing his term of disciplinary segregation, Anthony was reclassified to "Preventative status" and transferred from Draper to Limestone for six months where he was held in administrative segregation. Anthony complains that the extension of his segregation beyond the initial 25 days of punitive segregation violated his rights.

In addition to generally objecting to his segregation from the general prison population, Anthony specifically objects to restrictions placed on his physical exercise. He claims that, as a "chronic care patient," he must be allowed to exercise daily, a privilege that he says he was denied.[4] Anthony does not allege, however, that he was prevented from exercising in his cell. Anthony further admits that he was allowed to walk outside with restraints, but he contends that this exercise was insufficient to meet his health needs. Additionally, although he does not seem to have been given an opportunity to exercise outside his cell every day, uncontroverted prison records indicate that he was permitted to exercise frequently but that he did not always take the opportunity.

As we will explain, neither Anthony's segregated confinement nor the attendant restrictions on physical exercise offend either the Eighth or Fourteenth

---

[4] Anthony offers no evidence of any diagnosis that would require daily outdoor exercise.

5

Amendments.  We consider both claims, beginning with the Fourteenth

Amendment.

## A

As already indicated, due process rights are only implicated when

government actors deprive someone of a protected interest in "life, liberty, or

property."  U.S. Const. amend. XIV, § 1.  Anthony's Fourteenth Amendment

claims fail because he did not have a protected liberty interest in avoiding

administrative segregation or receiving more time for outdoor exercise than he did.

First, neither his segregation generally nor his restricted exercise schedule

specifically amounted to "a change in [his] conditions of confinement . . . so severe

that it essentially exceeds the sentence imposed by the court."  *Kirby*, 195 F.3d at

1291.  As to his stint in administrative segregation, "[i]t is plain that the transfer of

an inmate to less amenable and more restrictive quarters for nonpunitive reasons is

well within the terms of confinement ordinarily contemplated by a prison

sentence."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *receded from on other*

*grounds by Sandin*, 515 U.S. at 481.  Anthony's punitive segregation was limited

to 25 days.  His subsequent transfer to Limestone and placement in the "Restrictive

Housing Unit" were not punitive but rather administrative measures based on his

new heightened custody status.  By policy, inmates transferred to Limestone on

"Preventative status" are held in a "Restrictive Housing cell or Behavior

6

Modification cell" until they are no longer on "Preventative status," at which time they are transferred to another facility. Anthony was merely treated in accordance with this policy. His nonpunitive stint in segregation therefore did not "exceed[] the sentence imposed by the court." *Kirby*, 195 F.3d at 1291. Turning to the exercise restrictions, Anthony provides no evidence that he was allowed so little exercise as to constitute "a dramatic departure from the basic conditions of [his] sentence," *Sandin*, 515 U.S. at 485. He was allowed regular outdoor exercise—more opportunities than he seems to have wanted—and could exercise freely within his cell.

Second, Anthony has presented no evidence that any of the conditions to which he was subjected deprived him of a benefit "consistently bestowed . . . to prisoners" whose "deprivation . . . 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirby*, 195 F.3d at 1291 (quoting *Sandin*, 515 U.S. at 484). For one thing, he presented no evidence that his administrative segregation was imposed in violation of prison policy or in contravention of any right. Accordingly, there is no reason to believe that protection from administrative segregation is a benefit "consistently bestowed" on prisoners. As for the specific limitations on his outdoor exercise, although it appears that Anthony was not always afforded a daily opportunity to exercise outdoors, that deprivation did not "impose[] atypical and significant hardship on"

7

Anthony.  While a prison policy guaranteeing exercise time may give rise to a cognizable liberty interest, *see Bass v. Perin*, 170 F.3d 1312, 1318 (11th Cir. 1999), Anthony's case is unlike the prisoners in *Bass* who had been deprived of their "only two hours of yard time per week" leaving them with no outdoor exercise time at all, *id.*  By contrast, Anthony still had several hours of outdoor exercise in a typical week—enough that he didn't even make full use of the frequent opportunities that he was given.

## B

Next, we turn to the Eighth Amendment's prohibition on cruel and unusual punishment.  On its own, administrative segregation generally does not violate the Eighth Amendment.  "It is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual."  *Hutto v. Finney*, 437 U.S. 678, 686 (1978).  And Anthony's six months in solitary are not similar to the "twelve-year confinement" in segregation that we have previously noted "raises serious constitutional questions."  *Sheley v. Dugger*, 833 F.2d 1420, 1429 (11th Cir. 1987).  Without something more—a particularly harsh condition imposed during segregated confinement, for instance—Anthony's six-month term does not offend the Eighth Amendment.  Because restrictions on his physical exercise are the only

specific condition of Anthony's confinement of which he complains, we turn now to that issue.

In *Bass*, we assessed an Eighth Amendment claim brought by prisoners who had been "deprived of all outdoor exercise time." 170 F.3d at 1315–16. We acknowledged that this deprivation amounted to an "infliction of pain." *Id.* at 1316. We ultimately concluded, however, that the inmates had not established an Eighth Amendment violation because the deprivation of their outdoor exercise time did not involve an unnecessary or wanton infliction of pain, because it had a sound penological justification—the inmates had engaged in violent behavior while incarcerated. *Id.* Similarly here, Anthony's placement in restrictive housing was supported by the penological justification that he had shown himself to pose a threat to his fellow inmates; the restrictions on exercise are a mere corollary to his placement on preventative status. Anthony has never denied committing the assault on which both his disciplinary and administrative segregation were founded, and a Hearing Officer formally adjudicated him guilty. As such, there is no evidence that the exercise restrictions were unnecessary.

The restrictions also were not wanton—"defined as 'deliberate[ly] indifferen[t] to a substantial risk of serious harm to a prisoner.'" *Bass*, 170 F.3d at 1317 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Our precedent, by which we are bound, holds that even "total deprivation of outdoor exercise" as a

part of "continuous [solitary] confinement" does not qualify as wanton where prisoners' health is closely monitored and they are allowed to exercise in their cells. *Bass*, 170 F.3d at 1317, 1320. And Anthony was neither totally deprived of outdoor exercise nor prevented from exercising in his cell. Such treatment is not an indication of deliberate indifference to the risks of exercise deprivation. Accordingly, neither Anthony's placement on administrative segregation nor the attendant restrictions on outdoor exercise violated the Eighth Amendment.

The district court did not err in granting summary judgment on Anthony's claims regarding the conditions of his confinement because the record does not indicate that his time on administrative confinement violated the Eighth or Fourteenth Amendment or that Gordy limited his exercise privileges in a way that violated the Eighth or Fourteenth Amendment.

## II

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove such a claim, an inmate must demonstrate: (1) that he had an objectively "serious medical need," (2) that one or more officials acted with subjective "deliberate indifference to [that] serious medical need," and (3) that he suffered an "injury . . . caused by the [official's] wrongful conduct." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). "To establish the second element, deliberate indifference to the

10

serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

Anthony claims that defendants Gordy and Thomas ignored a "medical order to transfer Anthony to Hamilton"—another prison facility—"for treatment." Healthcare Site Administrator Chrystal Payne explained that no such transfer order can be found in his medical records. Gordy and Thomas likewise had no knowledge of any such order. Even assuming that such an order existed, Anthony presents absolutely no evidence to contest Gordy and Thomas's testimony that they were unaware of any such order. Moreover, Anthony does not explain from what serious medical need he suffered, and does not provide any evidence either that such a need existed or that any such need could be adequately addressed only by transferring him to Hamilton. Any failure on the part of Gordy or Thomas to respond to the alleged medical transfer order does not, therefore, rise to the level of a constitutional violation.

Anthony further claims that Nurse McKay administered an "injection without reducing the bubbles" in the syringe. He claims that she thereby "[c]aused excruciating [p]ain throughout [his] body in [his] legs and back" because she pushed an "air bubble into [his] veins." Nurse McKay denies ever having administered anything to Anthony intravenously, although she did inject him

11

subcutaneously.  But even if Anthony was injected with air bubbles, he presented no evidence that the bubbles in fact caused his pain—his own speculation on the matter is insufficient.  Moreover, Anthony has presented no evidence that his alleged administration of an injection without first reducing bubbles constitutes more than mere negligence.  And mere negligence—even medical malpractice—does not rise to the level of an Eighth Amendment violation.  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  Anthony provides absolutely no evidence that Nurse McKay acted with deliberate indifference—a degree of culpability that the Supreme Court has equated with criminal recklessness.  *See Farmer*, 511 U.S. at 839–40.

For all these reasons, the district court did not err in granting summary judgment as to Anthony's medical claims because the record does not indicate that Gordy, Thomas, or McKay acted with deliberate indifference toward his medical needs.

**AFFIRMED.**