[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10479

Non-Argument Calendar

_____

BRYAN ALEXANDER BLOUNT,

Plaintiff-Appellant,

*versus*

COMMISSIONER CULLIVER,
Individual and Official Capacity,
ANGIE BAGGETT,
Director of Classification,
Individual and Official Capacity,
VIVIAN MCQUEEN,
Central Review Board,
Individual and Official Capacity,
JOSEPH H. HEADLEY,
Warden, Elmore Correctional Facility,

2                    Opinion of the Court                    22-10479

Individual and Official Capacity,

MARY COOKS,

Warden, Draper Correctional Facility,

Individual and Official Capacity,

CAPTAIN MCKEE,

Elmore Correctional Facility,

Individual and Official Capacity,

BRITTNY BATES,

Classification Specialist, Draper Correctional Facility,

Individual and Official Capacity,

W.M. BURKS,

Lt., Elmore Correctional Facility,

Individual and Official Capacity,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:18-cv-00970-WHA-CSC

————————————————

Before WILSON, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Bryan Alexander Blount, an Alabama prisoner proceeding
pro se, appeals the district court's grant of summary judgment to

22-10479                Opinion of the Court                3

the defendants[1] on his Fourteenth Amendment and Eighth Amendment claims under 42 U.S.C. § 1983, on the grounds of qualified immunity. Blount asserts that the procedures the defendants followed in finding him guilty of assaulting a fellow inmate and reclassifying him twice to close custody[2] were procedurally inadequate, as the defendants lacked sufficient evidence. He also argues the district court erred in finding he had not presented evidence indicating that the defendants were aware of any harm he suffered in solitary confinement or of the substantial risk of serious harm he faced. After careful review, we affirm.

## I. Background

This case arises from an altercation that led to the death of inmate Billy Smith on November 13, 2017 at Elmore Correctional Facility (Elmore). Video footage was of insufficient quality to identify the participants, but witness testimony corroborated the participants' identities and how the altercation occurred. William Favor, a Supervisory Agent with the Alabama Department of Corrections' (ADOC) Investigations and Intelligence Division, investigated Smith's death. Following his investigation, he determined that Blount and Smith had been involved in an altercation in

---

[1] The defendants include six Alabama Department of Corrections officials: retired Associate Commissioner for Operations Grant Culliver; Assistant Classification Director Angie Baggett; Classification Review Board member Vivian McQueen; Warden of Elmore Correctional Facility Joseph Headley; Warden of Draper Correctional Facility Mary Cooks; and Captain Charles McKee.

[2] Close custody is the most restrictive custody level for inmates within the Alabama Department of Corrections.

dormitory A-2, which led to an exchange of blows. Smith then ran to the front door of the dorm with Blount and another inmate in pursuit. At the front of the dorm, Blount struck Smith multiple times, including at least once in the head, which caused Smith to fall and strike his head on the concrete floor.

On December 8, 2017, at Draper Correctional Center (Draper)[3] Blount received a copy of a disciplinary report that charged him with violating prison regulations by assaulting an inmate. Smith died on December 9 as a result of his injuries—a fractured skull and a large hematoma to the left temporal area of his head.

The following information comes from Blount's disciplinary report. On November 30, 2017, correctional officer W.M. Burks III received information from several confidential informants (CIs) that Blount assaulted Smith. These CIs had been used several times in the past, their prior information had been truthful, other information had been received to corroborate the CIs' information, no information uncovered during the investigation suggested that the CIs had reason to lie, and the information from the CIs was reliable.

Blount was personally served a copy of the report and was informed of his rights to present an oral or written statement at an upcoming disciplinary hearing and to provide written questions for the witnesses. Blount sought to call three witnesses: corrections officer J. McClease, inmate Paul Smith, and inmate Justin Mayes.

---

[3] Blount was transferred to Draper on November 30, 2017.

Captain Charles McKee was assigned as the hearing officer for the disciplinary action against Blount. At the December 14, 2017 hearing, Burks testified that several CIs, who had served as reliable witnesses before, informed him that Blount assaulted Smith. Upon questioning by Captain McKee, Burks explained that he had used his CIs about 10 times in the past, they were present at the time of the incident, and they had identified Blount during a photographic line-up.

Blount testified on his own behalf and denied assaulting Smith. Blount's three witnesses declined to appear, but in written statements, each denied having any direct knowledge of the incident. Burks responded to written questions from Blount, testifying that he had used his CIs around 10 other times, the assault happened in the bathroom of dorm A-2, it was unknown what Blount had used to assault Smith, and his witness statements were corroborated by several other inmates.

Captain McKee found that Burks was informed from a reliable source that Blount assaulted Smith, and the evidence did not support Blount's not-guilty plea. Thus, Captain McKee found Blount guilty of assaulting Smith. He recommended the following sanctions: loss of canteen privileges, telephone privileges, and visiting privileges for 45 days; disciplinary segregation for 45 days; and a custody review.

As for the custody review, Blount received advanced notification of his reclassification. The notice stated that Smith had passed away, and it explained that Blount would be reviewed for a

custody increase to "close" in accordance with the ADOC Classification Manual, requiring 30 months in close custody due to his assaultive behavior resulting in the death of another inmate. Blount waived the 24-hour notice requirement by signature. A hearing was held where Blount declined to call any witnesses.

On December 28, 2017, Warden Mary Cooks approved placing Blount in close custody at Draper. Blount was transferred to Kirby Correctional Center (Kirby) the same day. After ten months at Kirby, a "Close Custody Reduction Review Form" was improperly submitted by classification personnel, indicating that Blount was eligible for a custody reduction because he had completed the required six months in close custody for assaulting another inmate. However, because Smith had passed away after Blount's assault, Blount was not yet eligible for a custody reduction. Assistant Classification Director Angie Baggett approved the request, not realizing that Smith had passed away.

On September 24, 2018, Blount was transferred to St. Clair Correctional Facility (St. Clair), where, upon review by different classification personnel, it was discovered that Blount had been reduced from close custody in error. Because Blount had only served 10 of the required 30 months in close custody before his reduction, St. Clair classification personnel served Blount with notice that he be returned to close custody for the rest of the required time. Blount again waived the notice requirement by signature, and a hearing was held on the reclassification. Classification Review

Board member Vivian McQueen approved Blount's return to close custody on October 2, 2018.

On September 18, 2018, Blount petitioned for writ of certiorari to the circuit court in Montgomery County, challenging the resolution of his disciplinary hearing. The circuit court dismissed Blount's petition, and he appealed to the Alabama Court of Criminal Appeals (ACCA). The ACCA affirmed the circuit court's decision, finding that Blount had no protected liberty interest in any of the results of the disciplinary hearing and thus no right to due process.

On November 16, 2018, proceeding pro se, Blount sued the defendants in their individual and official capacities for violating his Fourteenth and Eighth Amendment rights under 42 U.S.C. § 1983. The defendants answered and provided supporting affidavits and evidentiary materials. Blount responded to those materials. The district court converted the defendants' answer and reports to a motion for summary judgment.

On November 14, 2021, Blount moved to file a second amended complaint to add new claims and defendants. The magistrate judge issued a Report and Recommendation (R&R) in which he recommended granting the defendants' motion for summary judgment and denying Blount's motion for leave to amend. Because Blount failed to meet his burden of showing that the defendants violated his Fourteenth and Eighth Amendments rights, the defendants were entitled to qualified immunity.

Blount timely objected as to the merits of whether qualified immunity was appropriate, but he did not object to the recommendation that his motion to amend be denied, nor did he object to the finding that the defendants were acting within the scope of their duties at all relevant times.  The district court overruled Blount's objections, adopted the R&R, and granted summary judgment to the defendants.  Blount timely appealed.

## II.    Standard of Review

We review "*de novo* a district court's disposition of a summary judgment motion based on qualified immunity, applying the same legal standards as the district court." *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).  Summary judgment is appropriate when depositions, discovery, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Although pro se pleadings are liberally construed, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  "[T]he nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial." *Id.*  "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015).

### III.    Analysis

#### A.  Qualified Immunity Law

The district court granted the defendants' motion for summary judgment and found that the defendants were entitled to qualified immunity from Blount's Fourteenth and Eighth Amendment claims.

To invoke qualified immunity, public officials must first show that they were acting within the scope of their discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The term "discretionary authority" covers "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted).

If the defendants establish that they were acting within the scope of their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. Overcoming the defendants' qualified immunity defense ordinarily involves a two-part inquiry. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). We consider whether (1) "the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated," and (2) "the right violated was 'clearly established.'" *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011) (per curiam). We can decide these issues in either order, but the plaintiff must satisfy both showings to survive a qualified

immunity defense. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019).

### B. Qualified Immunity Discussion

First, we note that it is uncontested that the defendants acted within the scope of their discretionary authority. *Maddox*, 727 F.3d at 1120. Nor did Blount object to the magistrate judge's finding that the defendants were acting within the scope of their duties at all relevant times, and he has also not raised this issue on appeal. *See Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (per curiam); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Accordingly, he has abandoned any arguments in this respect.

Next, the burden shifts to Blount to demonstrate that qualified immunity is inappropriate. Blount argues that the defendants violated his due process rights under the Fourteenth Amendment in his disciplinary and reclassification hearings. Blount also argues that ADOC officials actually killed Smith, and that he, Blount, was assigned to solitary confinement in an effort to conceal that fact. Thus, Blount argues, his confinement violated his Eighth Amendment rights.

We will address each argument in turn.

### i.    Fourteenth Amendment

First, Blount argues that his hearings were constitutionally deficient and were used arbitrarily and capriciously to cover up the role of the corrections officers in the death of Smith. Second,

Blount argues that he was denied due process because the defendants found him guilty of assaulting Smith at his disciplinary hearing without providing "some evidence" on which the hearing officer could have based his findings. Specifically, he argues that there was no corroboration of the information provided by confidential sources as required by *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985).

Prisoners may claim the protections of the Fourteenth Amendment's Due Process Clause and "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Two situations in which a prisoner can be deprived of his liberty such that due process is required are: (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court," and (2) "when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirby v. Siegelman*, 195 F.3d 1285, 1290–91 (11th Cir. 1999) (per curiam).

If a prisoner has a protected liberty interest implicated by a disciplinary action, the Due Process Clause requires: (1) written notice of the charges at least 24 hours before a hearing, so that an inmate may prepare a defense; (2) an opportunity to call witnesses and present evidence in his defense; and (3) a written statement of

the evidence relied on and the reasons for the sanctions imposed. *Wolff*, 418 U.S. at 564, 566.

Additionally, the disciplinary action must be "supported by some evidence in the record." *Hill*, 472 U.S. at 454. In the context of revocation of good time, the Supreme Court has elaborated on that standard, stating that:

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id*. at 455–56 (internal quotation marks, citation, and ellipsis omitted).

In *Young v. Jones*, we found that the "some evidence" requirement was satisfied in a disciplinary action for a prison escapee where a correctional officer testified under oath that (1) he received information from a confidential informant that the plaintiff had attempted to escape, (2) the confidential informant had been reliable in the past, (3) several sources described the escapee as having features similar to plaintiff such as having a "salt and pepper beard,"

and (4) one source had stated that the plaintiff had been seen in the yard shortly before the escape attempt. *Young v. Jones*, 37 F.3d 1457, 1459 (11th Cir. 1994). This Court further specified in *Young* that our role in reviewing a challenged disciplinary action is to determine whether an inmate received the procedural protections provided by *Wolff*, and whether the "some evidence" standard of *Hill* is satisfied. *See id.* at 1459–60.

First, we turn to Blount's argument that his hearings were constitutionally deficient. Even assuming (without deciding) that Blount had a protected liberty interest and was entitled to due process during the contested actions, we conclude that the ADOC complied with the requirements of *Wolff* and satisfied Blount's due process rights.

For his disciplinary hearing, Blount received detailed written notice of the charges against him and of his rights during the investigations and hearings. Blount had the opportunity to present evidence and witnesses, as stated in the notice provided before his disciplinary hearings. Blount utilized that opportunity by (1) naming three witnesses to testify (even though they ultimately did not testify), (2) testifying himself, and (3) providing written questions for his witnesses and Officer Burks, who answered the questions. Blount also received written statements of the findings against him and the evidence relied upon by the disciplinary panel. For his reclassification hearings, Blount received notice of those hearings and had an opportunity to present evidence.

Next, we turn to Blount's argument that the only evidence supporting his disciplinary report was sworn testimony by the corrections officer, which was insufficient because there was no corroboration of the information. Blount's argument lacks merit. Burks testified that (1) he learned about the assault from multiple confidential informants, (2) the confidential informants had been reliable in the past, (3) those informants were present at the time of the assault and identified Blount in a photo line-up as the assailant. Thus, as in *Young*, this testimony likely provided sufficient support to satisfy the "some evidence" requirement set forth in *Hill*.

Thus, Blount failed to demonstrate that the defendants violated Blount's due process rights, or that the defendants were not entitled to qualified immunity concerning his due process claims.

### ii.    Eighth Amendment

Blount argues that the district court erred in granting summary judgment to the defendants on his Eighth Amendment claims. He asserts that his assignment to solitary confinement for 30 months qualified as cruel and unusual punishment because ADOC officials falsified evidence to place Smith's death on Blount. He also asserted that he was kept in a condemned segregation cell for 28 days before he set fire to the cell.

To state an Eighth Amendment claim premised on failure to prevent harm, a plaintiff must show: "(1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk . . .; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation." *Bowen*

*v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016). We use an objective standard to examine the first element—a substantial risk of harm—and the plaintiff must demonstrate "conditions that were extreme and posed an unreasonable risk of serious injury to [the plaintiff's] future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam). The second element, whether the defendant was deliberately indifferent, involves an objective and subjective component:

> Subjectively, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference. Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act.

*Id. (*internal quotation marks, footnote, and ellipsis omitted).

First, Blount alleges several facts, particularly concerning his cell's condition, which he raised before the district court only in his second amended complaint. But he failed to object to the magistrate judge's R&R that his motion to amend be denied, and he fails to argue before us that the district court erred in doing so. Accordingly, he has abandoned any such arguments and we need not examine them. *Resol. Tr. Corp.*, 99 F.2d at 1149; *Sapuppo*, 739 F.3d at 680; *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).

Next, Blount failed to demonstrate a violation of the Eighth Amendment, as the district court correctly found that no evidence in the record stated that any defendant was aware of him suffering any harm in solitary confinement or of a substantial risk that he would suffer substantial harm.  Thus, Blount failed to show that the defendants possessed the required knowledge to support an Eighth Amendment claim.  *Marbury*, 936 F.3d at 1233.

## IV.    Conclusion

We affirm the district court's grant of summary judgment in favor of the defendants, having correctly found that the defendants were entitled to qualified immunity.

**AFFIRMED.**